# THE W. M. WOOD.[1]

## MACHELA v. THE W. M. WOOD.

### (*Circuit Court, E. D. Louisiana.* January 22, 1887.)

COLLISION—TUG—LUGGER.

In a collision between a tug-boat and a lugger in the port of New Orleans, the tug-boat was held not to be in fault when the signals of her master, intended to mean that he refused to take the lugger in tow, were misunderstood by the lugger; and those in charge of the lugger were held bound to observe that no precautions were being taken on the tug to take the lugger in tow with safety.

Admiralty Appeal.
*Ernest Sabourin,* for libelant.
*Charles S. Rice,* for claimant.

PARDEE, J. The fixing of responsibility for the collision in this case depends entirely upon whether the Wood undertook to tow the lugger, and so signified to the lugger. If she did, she should have slowed down her speed, and have taken proper precautions to take the lugger's line with safety to the lugger and her crew. If she did not, then the Wood was free from blame, and the whole responsibility for the damage done the lugger rests upon her master at the time. The evidence is not conflicting as to what was done by the Wood, with one exception, and that relates to when and why the two whistles were sounded, and on this the weight of evidence is that they were sounded after the lugger was entangled with the bark's hawser, and were signals to the engineer for the slowing down of speed. As to these whistles, the testimony of the officers of the tug, particularly of the engineer, is the best. The Wood had two whistles,—one large one, on the upper deck, and one small one, under cover of the boiler-room. It is not pretended that the large one was blown at all. There can be no doubt that the whole intended use and purpose of the small whistle on the Wood was to give orders to the engineer with reference to speed, and not to make signals to passing boats. This being the case, the evidence of the engineer on duty as to the time of sounding this whistle cannot be mistaken evidence, and cannot be impeached by witnesses on shore, or on other boats. It is therefore clear to me that the Wood herself did nothing to indicate that she would accept the towage of the lugger.

There remains, then, the conduct of the master. He swears that he refused, in terms, to take the lugger in tow, and waived her off. He is corroborated by Walters, the man at the wheel of the Wood, and by all the presumptions that arise from the conduct of the Wood. The witnesses on other boats, and on the shore, do not pretend to have heard what the master said, although many of them have been certain what he

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

meant by waving his hat. There is little room to find that the waving or signaling with the hat by the master was not in strict line with what he said, and what the tug-boat did.

There remains, then, for the libelant's case, that he misunderstood the signals and words of the master of the Wood. I think this was his fault. He was eager to be taken in tow. He had applied to the Wood the day before, and had been refused. He was bound to observe that no precautions were being taken on the Wood to take him in tow with safety, and he should have known the great danger unless the speed of the tug-boat was slackened. He should not have mistaken the signal of waving the hat, which at best, under the circumstances, was ambiguous, and was probably only given for emphasis, when he did not hear the words, and the whole conduct of the boat was giving them a distinct meaning of refusal.

A decree will be entered dismissing the libel, with costs of both courts.